IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| ROGER NEIL WELLS | ) | CASE NO. 04-75100 |
| | ) | |
| Debtor. | ) | |

_____

## MEMORANDUM DECISION

### FINDINGS OF FACT

The Debtor, Roger Neil Wells, filed his voluntary Chapter 11 petition on December 27, 2004.  The United States Trustee filed a Motion to Convert, Dismiss or Compel on November 4, 2005.  After a hearing on the matter held December 7, 2005, the Court granted the United States Trustee's Motion by Order dated December 8, 2005.  Charlie R. Jessee ("Trustee") was then appointed as the Chapter 7 Trustee for this case on December 20, 2005.  Since that time he has had to contend with, at best, a non-cooperative debtor and extended litigation with the Debtor's father and former business associate, Mr. Roy Wells, a largely self-trained attorney, in a continuing series of problems and disputes which would more than try the patience of the most even-tempered trustee.

Early in his administration of the case, specifically on March 3, 2006, Mr. Jessee, himself an attorney of long experience, filed with the Court an Application to employ LeClair Ryan Flippin Densmore ("LeClair Ryan") as counsel.  Specifically, Mr. Jessee sought to employ Mr. William E. Callahan, Jr., an officer in LeClair Ryan.  In this initial application, the Trustee sought the assistance of LeClair Ryan for legal research, review, preparation of legal documents, preparation of discovery requests and responses, negotiation of legal issues, and attendance at court hearings in the following matters: (1) a motion to sell real property of the estate free and

clear of liens; (2) an adversary proceeding to sell interest of co-owner in property of estate; (3)

any non-routine objections to claims based on legal grounds; and (4) any other incidental or

routine legal services reasonably required to properly administer the estate.  The Trustee sought

to pay any attorneys of LeClair Ryan between $165 and $310 per hour and any paraprofessionals

between $65 and $90 per hour.  The Trustee also sought reimbursement of all necessary

expenses for LeClair Ryan.  The Trustee also asserted that the services rendered pursuant to the

Application would be performed primarily by attorneys and paraprofessionals in the Roanoke

office, where attorney billing would range from $160 to $215 per hour and paraprofessional

billing would be set at $55 per hour.  In this application, the Trustee estimated that the fees and

expenses billed would be $4,100 and $400, respectively, and noted that the total fees would not

exceed $5,000 without further Court order.  The Trustee also estimated that the services would

yield a $40,000 net return to the estate.  The Court granted the Application to employ LeClair

Ryan by Order dated March 14, 2006 for the purposes included in the Application and subject to

the terms and conditions set forth in the same.

On November 30, 2006 the Trustee filed a Supplemental Application to employ

LeClair Ryan, in which the Trustee represented that the nature and extent of the duties for which

he was requesting the assistance of LeClair Ryan were greater than anticipated.  The Trustee

then requested that LeClair Ryan assist with the same tasks outlined in his initial application for

the following matters: (1) a motion to sell real property of the estate at Hurricane Road, in Wise

County, Virginia ("Wise County property"), free and clear of liens; (2) an adversary proceeding

to sell interest of co-owner in the Wise County property; (3) an adversary proceeding to compel

liquidation of a dissolved corporation named Well-Tec Corporation; (4) an adversary proceeding

2

to avoid post-petition transfer of property in a South Carolina condominium and to sell interest of co-owner in property recovered; (5) an adversary proceeding to obtain turnover of property of the estate from debtor's wife and to avoid post-petition transfer of property of the estate; (6) a motion for authority to conduct Rule 2004 examinations; and (7) a motion to compel Debtor to appear at 341 meetings. The Trustee estimated that the fees and expenses billed would be $28,500 and $1,000, respectively, and noted that the total fees would not exceed $37,500 without further Court order. The Trustee then estimated that the services rendered pursuant to the application would yield a net return of $280,000 to the estate. The Supplemental Application was granted by Order entered December 12, 2006.

A second Supplemental Application to employ LeClair Ryan was filed by the Trustee on August 3, 2007. This application did not seek to expand the duties and matters for which the Trustee sought the assistance of LeClair Ryan. Instead, the second Supplemental Application significantly raised the estimated fees that would be billed for these matters. Specifically, the application estimated that fees would be billed in the following amounts: (1) $2,000 for the motion to sell the Wise County property; (2) $2,500 for the adversary proceeding to sell interest of co-owner of the Wise County property; (3) $23,500 for the adversary proceeding to compel liquidation of the dissolved Well-Tec Corporation; (4) $19,500 for the adversary proceeding to avoid post-petition transfer of property in South Carolina; (5) $4,000 for the adversary proceeding to obtain turnover of property of the estate from debtor's wife; (6) $1,000 for the motion for authority to conduct Rule 2004 examinations; and (7) $1,000 for the motion to compel Debtor to appear at 341 meetings. In total, the Trustee estimated at this point that aggregate fees and costs would total $52,500 and $1,000, respectively, and noted that the

3

total fees billed would not exceed $62,500[1] without further Court order.[2]  The Trustee then reduced his initial estimate of the value the estate would derive from counsels' services from $280,000 to $180,000.  The final Supplemental Application was granted by Order entered August 14, 2007.[3]

In the course of his administration of various bankruptcy cases as a chapter 7 trustee, it is fair to say that Mr. Jessee has established a close working relationship with Mr. Callahan, who is an experienced bankruptcy attorney and is himself a chapter 7 panel trustee appointed by the United States Trustee to serve in this Court's District.  Mr. Jessee does, on some occasions, retain other attorneys to represent him in particular cases, often at an hourly rate of $125 per hour or that range, significantly less than Mr. Callahan's indicated rate.  Mr. Jessee, however, typically turns to Mr. Callahan when it appears that extended litigation may be necessary or issues of more than average complexity or novelty are in prospect, as was the situation in this case.

The Trustee and LeClair Ryan as his counsel chose to pursue three primary avenues for potential property that could be recovered for the benefit of the bankruptcy estate: first, adversary proceeding No. 06-07031, regarding a motion to sell co-ownership interests in

---

[1] It is unclear from the language of the Application whether this amount was intended to include both fees and expenses or only fees.

[2] At the time the second Supplemental Application had been filed, LeClair Ryan had already amassed fees totaling $45,722.

[3] As will be discussed in more detail below, the second Supplemental Application was not filed until after the Court's ruling, which was adverse to the Trustee's position, on the initial trial in the Well-Tec proceeding.

the Wise County property;[4] second, adversary proceeding No. 06-07094, regarding the adjoining

Wise County property owned in the name of Well-Tec Corporation; and, third, adversary

proceeding No. 06-07135, regarding the post-petition transfer of the Debtor's interest in a South

Carolina condominium.  Adversary proceeding No. 06-07094 relates specifically to property

titled in the name of Well-Tec Corporation which adjoins the co-owned Wise County property.

Accordingly, the Well-Tec and the Wise County property matters are directly related.  There

were two issues which arose in the Well-Tec proceeding:  first, whether the Debtor had any

interest in fee as a purported shareholder in the property owned by Well-Tec Corporation and,

second, whether the Debtor and his father as co-owners of the adjoining property might have had

an implied easement over a portion of the Well-Tec property.  The first issue was litigated to its

completion, ending in a Memorandum Opinion entered by this Court on July 30, 2007

concluding that the Trustee had not established by a preponderance of the evidence that the

Debtor had ever been, or had ever been intended to have been, a shareholder in Well-Tec

Corporation, but noted that the evidence implied a possible equitable servitude or easement over

the Well-Tec property for the continued existence of a septic tank drain field for the benefit of

the jointly-owned adjoining parcel, a possibility which had not been raised in the Trustee's

complaint or asserted at trial.  After the filing of an amended complaint and a responsive

pleading, this latter issue was scheduled for trial on December 12, 2007; however, the parties

reached a settlement of all claims and interests in dispute on this date, moments before the trial

---

[4] This proceeding ended with a Default Judgment Order being entered on May 12, 2006.
Though the Trustee was given the ability to sell the Debtor's interest in the property at issue,
such sale was never effectuated because the Trustee believed that the full value of such property
could not be realized until a determination of rights to the adjoining property held in the name of
Well-Tec was resolved in a separately-filed adversary proceeding.

5

was set to commence.[5]  A Motion for Authority to Accept a Settlement was subsequently filed

with the Court on January 29, 2008.[6]  In addition, the Trustee moved this Court to waive the

hearing on his Motion provided that no objection was filed within twenty days, which request

was granted.  No objection was filed, and the Motion was approved without a hearing by Order

entered February 26, 2008.  In the approved settlement, the Trustee agreed to dismiss with

prejudice both the Well-Tec and the South Carolina property adversary proceedings in exchange

for $85,000.[7]  The Trustee also agreed to abandon all property of the estate, including the

property which he had been previously authorized to sell as a result of the default in the

adversary proceeding, No. 06-07031.

Once all matters in the case were resolved, the Trustee filed a Final Report and

Proposed Distribution on July 28, 2008 which indicated that the total value of the assets of the

estate was $85,035.77.  Subsequently, the Trustee filed an Application for Compensation ("Fee

---

[5] By this time, LeClair Ryan had rendered services valued at $63,872.50.

[6] The Trustee represented that he "evaluated the value of the property interests which might be recovered in the adversary proceedings and the risks and costs associated with the recovery of any property interests and other assets by litigation, and concluded that the Settlement would result in funds available for distribution to creditors that were as much or greater than what the estate would obtain from the litigation of the issues in the adversary proceedings" when choosing to accept the settlement.  The Motion did not give any estimate of the distribution to unsecured creditors as a result of the settlement.

[7] In the complaint filed in the South Carolina property adversary proceeding, the Trustee and his counsel alleged that, as of the date of filing his bankruptcy petition, the Debtor owned an interest as a tenant in common in a condominium in Horry County, South Carolina but that the Debtor transferred this interest by quitclaim deed just over a month after the filing.  The complaint also alleges that the Debtor's interest amounted to one-half of the total value of the condominium, which it asserted had a fair market value of $250,000.

6

Application") on July 28, 2008,[8] and on the following day LeClair Ryan filed its Fee Application

seeking reimbursement for services rendered pursuant to the Applications to employ discussed

above.[9]  Attached to LeClair Ryan's Fee Application was an itemized list of fees and expenses in

the amounts of $66,565[10] and $2,171.95, respectively, for a total of $68,736.95.  A total of 328.9

hours were billed by the attorneys and paraprofessionals employed by LeClair Ryan.  A large

percentage of this time was billed by Mr. Callahan (208.2 hours), at an average hourly rate of

$215, and Lori D. Thompson (100.6 hours), at an average hourly rate of $205.  The Fee

Application also noted that, at the request of the Trustee, LeClair Ryan had agreed to reduce its

fees by the amount of $10,000.  Thus, LeClair Ryan seeks a total award of $58,736.95 in its Fee

Application.  This reduced total is somewhat less than the ceiling amount authorized in the

Court's August 14, 2007 order.[11]  In the Trustee's application, Mr. Jessee requested

---

[8] The Court subsequently approved the Trustee's Fee Application at a hearing held on September 3, 2008.

[9] Each Fee Application was accompanied by a separate Motion to Waive Notice and Hearing.  Both motions were granted without objection by Orders entered July 31, 2008.  These Orders provided that both Fee Applications would be approved without hearing provided that no objection was filed within five days prior to the hearing on the Applications, but an Objection to both applications, discussed more fully hereafter, was filed on August 27, 2008, just five days prior to the hearing.

[10] The front page of the itemized list provided by LeClair Ryan attached to its Fee Application indicates a total of $67,263.50 as fees billed for professional services.  However, page 23 of the list indicates that a total of $66,565 was billed for professional services.  The Court has undertaken an independent review by totaling the sum of all the independent time entries and has also arrived at the $66,565 number.  Neither the list nor the application explains the $698.50 discrepancy between the two numbers.  As a result, this Court finds that the total amount of fees requested, without factoring in the $10,000 reduction, is $66,565.

[11] While the Fee Application mentioned that LeClair Ryan and the Trustee negotiated for a $10,000 reduction in the total amount of fees and expenses counsel would request, it does not mention that the total amount, without factoring in the reduction, was significantly higher than the ceiling amount of $62,500 noted in the second Supplemental Application approved by this

reimbursement for $8,164.04 for fees and expenses.  The Trustee's Final Report indicates that,

after the administrative expenses were paid, including the fees and expenses of the Trustee and

his counsel, only $11,465.39 would remain for distribution to the creditors.  This amount, in fact,

would only be enough to allow for a 27% distribution to priority creditors and would leave

absolutely no distribution to the general unsecured creditors, whose claims total $53,804.82.

The aggregate requested fees and expenses of the Trustee and his counsel amount to

approximately 80% of the total bankruptcy estate of $85,035.77.

On August 27, 2008 Roy and Ruth Wells,[12] who were the defendants in the South

Carolina property adversary proceeding and are unsecured creditors of the Debtor, objected to

the Fee Applications on the ground that the fees were not reasonable in relation to both the size

of the bankruptcy estate and the funds available to distribute to the general unsecured creditors.[13]

Specifically, the objection takes issue with the number of hours that were spent on the adversary

proceeding concerning real estate in Wise County, Virginia.  On September 2, 2008 the Trustee

and LeClair Ryan filed a response to the Wellses' objection, in which they both asserted that the

fees sought by LeClair Ryan and the Trustee are reasonable in light of the $10,000, or 15%,

reduction in fees and in light of the fact that no property would have been recovered for the

benefit of the estate without LeClair Ryan's efforts and sought affirmative relief in the form of

sanctions against the Wellses and their counsel.

---

Court.  Moreover, even if the $62,500 ceiling was not intended to include expenses, the fees
billed, prior to the reduction, totaled $66,565, still well over the ceiling.

[12] Roy Wells is the father of the Debtor and was co-owner with him of the Wise County
property and was also the principal defendant in the Well-Tec adversary proceeding.

[13] No other creditor objected to the Fee Applications.

A hearing was held on the Fee Applications and the Wellses' Objection on September 3, 2008 during which the Court heard arguments from the parties which essentially mirrored the arguments made in the Fee Applications, the Wellses' Objection, and the Trustee's and LeClair Ryan's response to that objection.  The Wellses' counsel again asserted that the amount of time spent in the matter of the adversary proceeding property in Wise County, Virginia was unreasonable, as this property, and any proceedings seeking to recover value from that property for the benefit of the estate, rendered no appreciable net return to the estate. LeClair Ryan argued, however, that consideration of the Wise County property, along with the proceedings related to the South Carolina property and Well-Tec Corporation, factored into the eventual settlement reached which netted the only property that added any material value at all to the estate.  In addition, counsel for LeClair Ryan noted that the Wellses, as unsecured creditors, would likely gain little, if anything at all, if their objection was sustained because the priority creditors' claims totaled $41,745.81.  Counsel for LeClair Ryan questioned the motivation of the Wellses in filing the Objection.

During this hearing, the Court, after overruling the Objection to the Trustee's Fee Application and indicating that the latter's request for sanctions against Mr. and Mrs. Wells and their counsel would need to be set for a later hearing, commented on the seemingly shocking fact that Mr. and Mrs. Wells, of all creditors, had filed objections to the fee applications when they and the Trustee previously had reached a comprehensive settlement of their disputes.  However, the Court also conceded that there could be a legitimate basis for questioning the value versus the cost of LeClair Ryan's services in the Well-Tec litigation.  More specifically, the Court questioned the confidence of counsel in the strength of their assertion that the Debtor, by reason

of his intertwined business and ownership relationships with his father, Mr. Roy Wells, was a

50% shareholder of Well-Tec, a now dissolved Virginia corporation for which no stock

certificates had ever been issued.  No evidence was introduced at trial establishing that the

Debtor had either furnished any of the monetary consideration or pledged his own credit to

acquire the real estate which was the corporation's sole asset, and the Court observed that if

counsel had originally included a second count seeking a declaratory judgment on the issue of

the existence of an easement over such property for the continued use of a septic tank drain field

for the benefit of the jointly-owned adjoining parcel, the discovery could have been done and the

matters jointly heard at the initial trial at significantly less cost and more benefit to the estate.

Perhaps not too surprisingly, Mr. Callahan disagreed totally with this assessment and suggested

that his firm was being subjected to unfair second-guessing as to its handling of the litigation and

defended such handling vigorously.  In fact, he disputed the correctness of the Court's ruling and

contended that the circumstantial evidence of the parties' other business and property dealings

was quite sufficient to establish the Debtor's ownership of one-half of the corporation, and, the

Court's decision notwithstanding, that he still believed that the Trustee's assertion of an

ownership interest in its property was correct.   Boiled down to its essence, he contended, and

certainly seemed to believe, that Mr. Roy Wells had pulled a fast one on the bankruptcy court

which it fell for and that any blame should fall on the Court's mistaken decision, which was not

one which ought to have been reasonably anticipated.  The Court will not undertake here to

defend its decision but will incorporate by reference its Memorandum Opinion dated July 30,

2007 in Adversary Proceeding No. 06-07094, which explains the Court's determination that the

circumstantial evidence in question was inadequate to carry the Trustee's burden of persuasion

in light of the testimony of Mr. Roy Wells, who was the only witness who testified, that the

Debtor had never furnished any consideration for the purchase of the property and had not been a

shareholder.  The Court will also note that following such decision no motion to alter or amend

its ruling was made.  Following these comments, the Court then observed that (i) LeClair Ryan

was charging and being paid premium rates for which the Court expected commensurate legal

services, and (ii) in light of Mr. Callahan's expressed opinion as to the Court's critique of his

firm's services, his billing judgment as to the fair value of its services in that adversary

proceeding might reasonably be questioned.  While the Court offered him an opportunity for the

firm to respond to some of the Court's questions about the firm's litigation strategy and the

thoroughness of its discovery in preparing for the first trial of that adversary proceeding, he

declined that offer and requested the Court to make a determination of the matter based on the

evidence and arguments already before it.  In summary, the Court finds that counsel for the

Trustee, and perhaps the Trustee as well, were so strong and confident in their belief that the

Debtor had been an equal owner of Well-Tec that they failed to evaluate prior to filing the

adversary proceeding the merits of a possible alternative fall-back position of the existence of a

property right in the Well-Tec property short of a fee simple interest.  Indeed, they have offered

no evidence or argument to the effect that they ever did so.

       After the hearing, the Wellses' counsel sought to withdraw the Objection and

counsel for LeClair Ryan sought to withdraw the request for sanctions, prompting this Court to

hold a telephonic conference on September 4, 2008.  In this conference, the Wellses' counsel

explained his and his clients' reasoning in filing his Objection to both Fee Application.  In

addition, Mr. Callahan on behalf of LeClair Ryan, while expressly disclaiming any criticism of

the settlement, observed that the Trustee had the ultimate authority to decide whether to accept

or reject the proposed settlement offer and argued that its fees should not be reduced based on

the Trustee's decision to settle.

At the conclusion of the hearing, the Court requested that LeClair Ryan submit a

project-specific analysis of its time billed.  This analysis was filed on September 5, 2008 in the

form of a Supplement to its Fee Application.  In this Supplement, LeClair Ryan allocates its fees

and expenses in the following manner: (1) $14,161.25 was billed for general legal services; (2)

$1,457.25 was billed for the preparation of pleadings related to the adversary proceeding, No.

06-07031, to obtain authority to sell co-ownership interests in the Wise County property ; (3)

$23,447.75 was billed for the preparation of pleadings, discovery, and court appearances related

to the adversary proceeding, No. 06-07094, regarding the authority to sell the adjoining Well-

Tec property, and $9,778 was billed for the preparation of pleadings, discovery, and court

appearances related to the same adversary proceeding, regarding the request to obtain a

declaration of the equitable servitude over the Well-Tec property for the benefit of the co-owned

property;[14] and (4) $17,730.75 was billed for the preparation of pleadings, discovery, and court

appearances related to the adversary proceeding, No. 06-07135, to recover the South Carolina

property transferred post-petition.

The second Supplemental Application predicted that $26,000 would be billed for

---

[14] LeClair Ryan's supplement places these amounts into two separate categories; however, for ease of comparison, the Court merges these amounts into one category encompassing all issues in the Well-Tec proceeding.

the Well-Tec adversary proceeding,[15] that $2,000 would be billed for the Wise County property

adversary proceeding that did not relate to the Well-Tec matters, that $19,500 would be billed

for the South Carolina property adversary proceeding, and that $5,000 would be billed for

general legal services.[16]  In its Supplement, LeClair Ryan now seeks reimbursement for

$14,161.25 in fees billed for general legal services, $1,457.25 in fees billed for the Wise County

property adversary proceeding, $33,225.75 in fees billed for the Well-Tec adversary proceeding,

and $17,730.75 in fees billed for the South Carolina adversary proceeding.  The following chart

illustrates the predictive amounts contained in the second Supplemental Application as compared

to the final billing amounts indicated in LeClair Ryan's Fee Application:

|  | Supplemental Employment Application | Fee Application[17] |
| --- | --- | --- |
| Wise County Property | $2,000 | $1,457.25 |
| Well-Tec Corporation | $26,000 | $33,225.75 |
| South Carolina Property | $19,500 | $17,730.75 |
| General Legal | $5,000 | $14,161.25 |

Based on the preceding chart, it is apparent that, while LeClair Ryan seeks reimbursement for

slightly less than the amount that was initially estimated for the Wise County property and South

---

[15] This number is the sum of the estimates listed in the second Supplemental Application for the adversary proceeding to sell interest of co-owner of the Wise County property and the adversary proceeding to compel liquidation of the dissolved Well-Tec Corporation, as both of these matters were included in adversary proceeding, No. 06-07094.

[16] This number is the difference between the total estimate of fees in the second Supplemental Application ($52,500) and the sum of the estimates of fees for the Wise County, Well-Tec and South Carolina adversary proceedings ($47,500).

[17] The amounts listed herein do not take into account the $10,000 reduction proposed by the Trustee and agreed to by LeClair Ryan.

13

Carolina property matters, it does seek reimbursement for significantly more than the amount

that was initially estimated for general legal services (by $9,161.25) and for the Well-Tec

matters (by $7,225.75).[18]  As mentioned above, LeClair Ryan, when responding to questions

regarding the net benefit to the estate as a result of its services in relation to the amount

requested in exchange for those services, argued that it should not suffer a reduction in fees due

to the settlement decision of the Trustee, over which it had no control.

As mentioned above, the Trustee, in his application, sought compensation in the

amount of $7,501.79 in fees plus $662.25 in expenses, for a total amount of $8,164.04.[19]  The

Trustee also attached an itemized list of time billed for the matter, which indicates that he spent a

total of 202.8 hours on Roger Wells' bankruptcy case.  If billed at his normal rate, the Trustee's

attachment indicates that he would have billed a total amount of $26,773.52 for his services

rendered in this case.  In addition to the 328.9 hours billed by LeClair Ryan, both the Trustee and

his counsel spent a total of 531.7 hours on the administration of Roger Wells' case.  The Trustee

himself rendered services accounting for 38% of the time spent on this case.  In addition, the

Trustee and LeClair Ryan together request compensation in the amount of $66,900.99 in their

---

[18] What seems most surprising about this comparison between the actual time charges
generated of $33,225.75 in the Well-Tec litigation over the amount of $26,000 estimated in the
Second Supplemental Application is that the former figure reflects a settlement on the day of, but
prior to, the scheduled trial of the South Carolina property proceeding and the second trial of the
Well-Tec adversary proceeding, while the latter figure reflects the estimate made after the
Court's ruling in the first Well-Tec trial of what would be needed to litigate those matters to
conclusion.  It should be noted, however, that if the $10,000 reduction in fee agreed to between
the Trustee and LeClair Ryan were applied totally to the Well-Tec proceeding, the net figure
would then be less than the $26,000 estimated charge.

[19] The amount of compensation sought by the Trustee was the maximum to which he
could be entitled under 11 U.S.C. § 326(a).

14

Fee Applications.  Of that amount, the Trustee seeks 12% of the total amount requested as

compensation for legal fees for the administration of the case.

CONCLUSIONS OF LAW

This Court has jurisdiction over this proceeding by virtue of the provisions of 28

U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District

Court on July 24, 1984.  The determination of whether to grant an Application for Compensation

for services rendered for the benefit of the bankruptcy estate is a matter concerning the

administration of the estate and a "core" bankruptcy matter pursuant to 28 U.S.C. §

157(b)(2)(A).  Because this case was filed prior to the enactment of the Bankruptcy Abuse

Prevention and Consumer Protection Act of 2005 ("BAPCPA"), the Court's determination of the

issues before it are controlled by the applicable provisions of the pre-BAPCPA Code.  *See*

Bankruptcy Abuse Prevention and Consumer Protection Act, § 1501(a)(1).

As an initial matter, the Court observes that it "has an independent duty to

review...fee applications," *In re Laines*, 2007 Bankr. LEXIS 2686, *18 (Bankr. E.D. Va. 2007),

and such responsibility "is great, as each creditor individually has little reason to object to

requested compensation."  *Id*. at *18-*19 (citing *In re Great Sweats, Inc.*, 113 B.R. 240, 242

(Bankr. E.D. Va. 1990)); *see also* 11 U.S.C. § 330(a).  The Court's determinations regarding the

reasonableness of the compensation requested in the fee applications before it are governed by

11 U.S.C. § 330.  Under the pre-BAPCPA version of that section, the Court is directed, when

determining "the amount of reasonable compensation to be awarded" to a trustee or professional

person employed for the estate, to

> consider the nature, the extent, and the *value* of such services, *taking
> into account all relevant factors*, including–

15

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a cause under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue or task addressed; and

(E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3) (emphasis added).

In *Laines*, the bankruptcy court considered the fee applications of a trustee and counsel for trustee, and applied the pre-BAPCPA §330(a) factors with a level of specificity that this Court finds persuasive. There, the trustee sought compensation in the amount of $57,000, and his counsel sought compensation in the amount of $48,000. *Id*. at *14. The court initially observed that the estate had been declared administratively insolvent even though the trustee had projected a distribution of $483,400 for the unsecured creditors. *Id*. at *1. Applying §330, the court observed that "the skill requisite to perform the legal service properly" was an important factor to consider when reviewing a fee application. *Id*. at *47 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 718 (5th Cir. 1974)). More specifically, this consideration required that the trial judge "closely observe the attorney's work product, his preparation, and general ability before the court," and "the trial judge's expertise gained from past experience. . . and his observation from the bench . . . become highly important in this consideration." *Id*. In this light, the court analyzed the specific failings of the trustee in his administration of the estate,

16

including his failure to undergo a market analysis of properties he endeavored to sell, his failure to properly identify all liens on and tax liabilities of the estate, his failure to properly analyze the effect of several judgment liens, and his failure to merge a number of issues into a single, well-pleaded complaint. *Id*. at *22-*33.  More specifically, the court noted that the case was "an administrative insolvency because the trustee and his counsel failed to properly analyze the case at its inception." *Id*. at 21.  The court held that "a trustee is obligated to properly administer the bankruptcy estate," and, after applying the factors enumerated in § 330, the court held that the trustee would be allowed a reduced fee of $12,000, and counsel for the trustee would be allowed a reduced fee of $7,500 based on the fact that, because of the lack of foresight and analysis at the inception of the case, the trustee and his counsel, in essence, "chased phantom assets." *Id*. at *51, *55, *59-*60.  Additionally, the Court reduced the fee because "the fees requested [were] excessive in light of the quality of work performed and the results obtained." *Id*. at *60.

In addition to the legal standard by which a fee application should be judged, the Court must also take into account the burden of proof.  Compensation awarded to trustees and other professionals pursuant to 11 U.S.C. §330(a) is of course an administrative expense of the bankruptcy estate.  One who seeks an allowance of an administrative expense in bankruptcy has the burden of proving his or her entitlement to same. *In re Merry-Go-Round Enterprises, Inc.*, 180 F.3d 149, 157 (4th Cir. 1999); *Garb v. Marshall (In re Narragansett Clothing Co.)*, 210 B.R. 493, 498 (B.A.P. 1st Cir. 1997) ("The Trustee bore the burden of proving that his . . . [requested] fee was reasonable.").  The fiduciary duties of the trustee must be compensated as such and the trustee's counsel may not be compensated for services statutorily required of the trustee. *In re J. W. Knapp Co.*, 930 F.2d 386, 388 (4th Cir. 1991).

17

## DISCUSSION AND DECISION

While the Court has not found and does not wish in any manner to imply any lack of good faith or good intentions on the part of either the Trustee or Trustee's counsel in the handling of this case and the adversary proceedings it spawned, it nevertheless is left with an abiding sense that the system has failed the creditors of Roger Wells by producing a result in which 87% of an $85,000 settlement recovery resulting from the persistent and prolonged efforts of the Trustee and his counsel is being absorbed by the administrative expenses of the case, including $5,211.55 already distributed from the balance of the estate for filing fees (most of which were incurred as a result of numerous unsuccessful adversary proceedings filed by the Debtor-in-possession *pro se* prior to the conversion of the case to Chapter 7) and $750 that is being paid to the United States Trustee's Office for statutory fees due to it during the Chapter 11 phase of this case, leaving a balance of only $11,465.39 for proposed distribution to creditors, which amount provides a 27% distribution to allowed priority claims but nothing to the general creditors.

The Court has good reason, to its regret, to believe that its own oversight of the administration of this case has been deficient in two major respects. First and foremost, it failed to require a full hearing on the Trustee's proposed $85,000 settlement so that such amount could be explained and evaluated in light of the representation made to the Court little more than four months previously in the second Supplemental Application that counsel's services were expected to result in a net return to the bankruptcy estate of $180,000. That discrepancy between the Trustee's prediction and the recommended settlement is so great that the latter should never have been approved by this Court without requiring a full hearing. Unfortunately, it is too late in the

18

day to do such an evaluation at this point, other than perhaps just for the purpose of evaluating

the Trustee's application for compensation, because the settlement has been approved and now is

long final.  Second, in light of the discrepancy between the representation made to the creditors

in the Trustee's Motion for Authority to Accept a Settlement that "the Settlement would result in

funds available for distribution to creditors that were as much or greater than what the estate

would obtain from litigation of the issues in the adversary proceedings," which certainly would

have led general creditors to believe that they would benefit from the proceeds of the settlement,

and the painful truth contained in the Trustee's Final Report that general non-priority creditors

would receive, quite literally, nothing, the Court itself should have required a full hearing even

in the absence of any objection being filed on both fee applications.  After all, while the

information was available to them via the docket entries in the case, creditors were not served

with the second Supplemental Application or the order approving it and would not generally

have had any information readily available to them as to what the anticipated legal fees were

going to be.  While the Court might try to console itself that such decisions were made in

reliance upon its experience over time with the diligence and integrity of the Trustee and his

counsel, and giving weight to the agreed $10,000 reduction in LeClair Ryan's actual time

charges negotiated between it and the Trustee, a careful review of the facts determined

previously in this decision demonstrates the Court's insufficient attention to the overall

consequences of the individual applications and motions it approved without requiring a hearing

in the absence of an objection being filed by some party in interest.  That is not to say, however,

that a full hearing of the Motion for Authority to Accept a Settlement, at which the Trustee could

have explained his rationale and replied to any questions raised by the Court, would necessarily

19

have had a different result. The point is not that the Court definitely would have disapproved the settlement after such a hearing, but that under the facts and circumstances it should not have approved the same without asking some pointed questions.

The Court has no basis before it to discuss the United States Trustee's review of the fee applications now before the Court or the $85,000 settlement or, indeed, the second Supplemental Application which substantially raised the estimated compensation for Trustee's counsel. The United States Trustee may well have inquired into all of such matters and concluded that all were appropriate and justified. All the Court can say is that the United States Trustee has not filed an objection with respect to any of these requests.

While the Court's expression of some questions about LeClair Ryan's charges and strategy in the Well-Tec adversary proceeding obviously hit a nerve with Mr. Callahan, nevertheless it is its responsibility to determine appropriate compensation based on its assessment of all relevant factors and circumstances even if counsel may feel such comments to be unfair or misguided. How that responsibility ought to be discharged under the unusual situation presented here and at this stage of the case is not at all evident. The Court simply does not know whether its concerns about the lack of any direct evidence that Roger Wells, the Debtor, had ever provided any of the consideration for the acquisition of the Well-Tec property, could be easily answered by explaining what efforts were made by counsel to ascertain such evidence and that there was, quite simply, none available, or, conversely, that their confidence in the strength of the circumstantial evidence was so strong that they felt no real need to inquire more deeply. Similarly, the Court does not know whether counsel's disinterest in supplying information on this subject is attributable to a disdain for the Court's observations and questions

or to being asked to justify its work and fees, or to a feeling that such information will make no

difference in the ultimate outcome and would require further otherwise billable time to provide

it, or to a disinclination to explain decisions which seemed appropriate at the time but in

retrospect might seem questionable, or to some other reason or combination of reasons.  Based

on Mr. Callahan's comments at the hearing already discussed previously and in the absence of

any evidence or suggestion to the contrary, there is enough before the Court to justify its finding

that the failure to include a second count in the Well-Tec complaint was attributable to counsels'

confidence in the merit of the Trustee's claim that the Debtor was a shareholder in Well-Tec.

While all acknowledge that reviewing in retrospect is much easier than seeing into the future,

nevertheless the Court cannot escape the belief that counsel being paid at the rates charged by

LeClair Ryan ought to appreciate that litigation is inherently a most uncertain process not

infrequently yielding an unexpected result and that in the absence of some evidence such as

testimony by the Debtor himself or the existence of a stock certificate directly establishing

ownership, the inclusion of an alternate ground for relief of a legal right to continue the use and

maintenance of the drain field would have been prudent.  While the Court recognizes that a

decision not to include an additional count to the complaint could have been a matter of

conscious and deliberate legal strategy, Mr. Callahan did not make any contention to that effect

and the Court does not believe that a general complaint that the firm is being subjected to unfair

"second guessing" is a sufficient foundation upon which to conclude that such a decision was a

result of thoughtful analysis and planning.

> This case has been a difficult and trying one for all parties concerned, presumably

most so for the Trustee and his counsel.  Perhaps the Court itself may have succumbed to some

degree of fatigue in dealing with the pertinent issues and a strong desire to see the administration

of the case concluded, a case now nearly four years in duration.  Conscious of the likely

impossibility of reaching a result which will satisfy all parties in interest in this case as being just

and appropriate, even a much less ambitious goal of making a decision with which even the

Court is satisfied seems somehow just beyond its grasp.  Just as an egg cannot be unscrambled,

none of us can have a do-over of the administration and adjudication of this case.  Even so,

simply throwing up one's hands seems unacceptable.  On August 3, 2007, when this Court had

already ruled against the Trustee after the initial trial in the Well-Tec adversary proceeding and

at a time when, according to their time records, LeClair Ryan had already incurred time charges

of $45,722, the second Supplemental Application for Trustee's counsel was filed which

estimated that services totaling $52,500 in value would be necessary to complete the legal work

incident to the administration of this case.  At that time both counsel and the Trustee had, or at

least certainly ought to have had, a reasonably clear understanding of what yet remained to be

done.  Certainly that would have included the full prosecution of the Well-Tec and South

Carolina condominium adversary proceedings.  Counsel did prepare for those trials, but, for

better or for worse, they ended up being settled on the day of trial.  It is very difficult to see how

the services necessary to reach that point could have been more than the Trustee and counsel

contemplated at the time of filing the amended employment application.  That estimate of

$52,500, subject to a "cap" of $62,500, was approved by this Court upon a prediction that such

services would result in a net recovery to the bankruptcy estate of $180,000.  As Mr. Callahan

points out, the decision to settle all estate claims for $85,000 was made by the Trustee, not by

counsel.  Nevertheless, Mr. Callahan prepared and signed on behalf of the Trustee the Motion to

22

approve that settlement which recited the latter's determination that such settlement would

provide "funds...for distribution to creditors that [would be] as much or greater than what the

estate would obtain from the litigation of the issues in the adversary proceedings."   While that

representation may have been accurate insofar as the proposed settlement would ultimately

provide some distribution to priority unsecured creditors, it clearly was less than satisfactory as

far as informing general unsecured creditors that the settlement would provide nothing to them.

At that time Mr. Callahan had available to him more information than anyone else then had

about the cost of the legal services which had been rendered to that point.  The Court wishes to

be quite clear here that it does not intend to insinuate that Mr. Callahan or the Trustee filed, or

may have filed, a motion or any other pleading which either appreciated provided less than

entirely adequate or satisfactory information to the Court or any parties in interest in the case.  In

fact, the Court is confident that such was not the case. The Court's point is, rather, that more

information on this point was available to counsel and the Trustee than to any other party in

interest.  Under these circumstances, after due consideration of the history of this unsatisfactory

case and its current posture, as well as the findings of fact and conclusions of law made above,

the Court concludes that to limit LeClair Ryan's compensation to the $52,500 estimate contained

in the second Supplemental Application is not unfair or punitive to such firm, and such a result

gives some consideration to the Court's assessment of the ultimate value of the firm's services in

relation to the cost to provide them.  While even this result leaves the Court less than content

with the final conclusion, it comes closer than any other it has been able to devise.  All of this,

the Court concludes, is in line with § 330(a) and the *Laines* decision applying that section.

It is for the reasons noted above that the Court has declined the post-hearing

attempts by Mr. and Mrs. Wells to withdraw their objections to the fee applications and the

Trustee and his counsel to withdraw their requests for sanctions and considered the fee

applications on their merits.  In light of the Court's approval of the Trustee's fee application, it

will honor his request to withdraw his request for a sanction against Mr. and/or Mrs. Wells

and/or their counsel.  In light of its determination that an objection to the fee application of

Trustee's counsel had some merit to it, even from as unlikely a source as Mr. and Mrs. Wells and

regardless of their original motivation in doing so, the Court will deny the request for a sanction

against them for filing it.

CONCLUSION

Based on the foregoing, the Court sustains the Wellses' Objection to LeClair

Ryan's Fee Application, and the Court will limit LeClair Ryan's compensation of fees to

$52,500.  However, the Court will allow LeClair Ryan full reimbursement for its expenses, in the

amount of $2,171.95, so that LeClair Ryan shall be awarded a total of $54,671.95 to be paid

from the estate as an administrative expense.  Further, the Court shall deny LeClair Ryan's

request for sanctions against Mr. and Mrs. Wells and their counsel.  Finally, the Court will

confirm its ruling from the bench approving the Trustee's Fee Application in full.  An order in

accord with the ruling explained in this opinion will be entered contemporaneously herewith.

This 1st day of October, 2008.

*William F. Stone, Jr.*

UNITED STATES BANKRUPTCY JUDGE